## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON  DIVISION

| | | |
|---|---|---|
| **DANIEL G. KAMIN,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13CV00058 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **U.S. BANK NATIONAL ASSOCIATION,** | ) | By:  James P. Jones |
| **AS TRUSTEE, ETC.,** | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*William R. Rakes and Michael J. Finney, Gentry Locke Rakes & Moore, LLP, Roanoke, Virginia, for Plaintiff; Constantinos G. Panagopoulos, Ballard Spahr, LLP, Washington, D.C., for Defendant.*

In this civil diversity action, the plaintiff, Daniel G. Kamin, has sued U.S. Bank National Association ("U.S. Bank").  Kamin seeks a declaratory judgment that his liability under a personal Guaranty of a commercial mortgage loan has not been triggered under the loan documents.  U.S. Bank has counterclaimed that Kamin is liable for the entire debt and associated losses based upon his Guaranty. U.S. Bank also counterclaims that Kamin is liable for tortious interference with contract as well as statutory conspiracy.  Kamin has moved to dismiss the two tort counterclaims, arguing that they are barred under Virginia law because they relate to an alleged breach of contract rather than independent legal duties.  For the reasons set forth below, I will deny Kamin's motion.

I

In considering Kamin's Partial Motion to Dismiss Counterclaim, I must accept as fact the following allegations made by U.S. Bank.

This action arises out of the financial difficulties of Euclid Center L.P. ("Euclid"), the owner of a shopping center in Bristol, Virginia.  Euclid owes $6.9 million on a mortgage loan currently held by U.S. Bank, secured by the shopping center property.  The shopping center's anchor tenant was K-VA-T Food Stores, Inc. ("KVAT"), which operated a supermarket on the premises and paid Euclid rent based in part on its gross receipts from the business.  KVAT closed its supermarket and thereafter Euclid defaulted on the mortgage loan.

Euclid is a limited partnership.  The Daniel G. Kamin Bristol Corporation ("Kamin Bristol Corp.") is a general partner of Euclid, and Kamin, the plaintiff, is President of Kamin Bristol Corp.

Euclid's mortgage loan is on a non-recourse basis to Euclid, except under certain defined circumstances.  Kamin executed a Guaranty by which he in turn would be personally liable for any recourse debt if a number of specified events happened, including if Euclid breached Section 4.2 of the Deed of Trust.  U.S. Bank claims that Euclid breached Section 4.2 by taking on additional debt other than trade payables, by failing to maintain adequate capital for reasonably

foreseeable business obligations, and by engaging in unauthorized transactions with KVAT and Kamin.

In its counterclaim for tortious interference with contract, U.S. Bank alleges that Kamin intentionally caused Euclid to breach the terms of its loan agreement by (1) causing Euclid to take on outside debt by taking a loan from him, and (2) causing Euclid to enter into an unauthorized settlement agreement with KVAT after KVAT closed its supermarket. In the settlement agreement, Euclid agreed to reduce KVAT's rent and KVAT agreed to pay an inflated price for other property owned personally by Kamin. U.S. Bank alleges that Kamin arranged the settlement so that he was paid instead of Euclid, thus diverting funds that could have been used to satisfy the loan. U.S. Bank also alleges that the settlement agreement was made without its knowledge or prior written consent, in contravention of the loan documents.

In its counterclaim for statutory conspiracy, U.S. Bank asserts that Kamin conspired with Euclid to harm U.S. Bank's interest in recovering under the loan agreement by (1) facilitating the breach of Euclid's fiduciary duty to maximize its assets for the payment of its creditors; and (2) facilitating the conversion of property subject to the loan agreement. U.S. Bank also alleges that KVAT was part of the conspiracy and party to the unauthorized settlement agreement.

II

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the pleader has properly stated a cognizable claim.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).   Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In order to survive a motion to dismiss, the pleader must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In evaluating a pleading, the court accepts as true all well-pleaded facts and construes those facts in the light most favorable to the pleader.  *Id.* at 678.

The parties are agreed that Virginia substantive law applies to U.S. Bank's claims.  Under Virginia law, in order for a single act or occurrence to give rise to claims in both tort and contract, "'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'"   *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293 (Va. 2007) (quoting *Foreign Mission Bd. of the S. Baptist Convention v. Wade*, 409 S.E.2d 144, 148 (Va. 1991)).  The elements for tortious interference with contract are:

> (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the

part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted.

*DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 670 S.E.2d 704, 706 (Va. 2009).

In this case, U.S. Bank has alleged that Kamin had knowledge of the contractual relationship between it and Euclid, and intentionally caused Euclid to violate the loan agreement, damaging U.S. Bank. Taking the allegations in the pleadings as true, Kamin arranged a settlement agreement with Euclid's primary tenant that caused funds that would have gone to Euclid or U.S. Bank to go instead to Kamin. The settlement agreement was made without U.S. Bank's knowledge or consent, and included a reduction in rent as well as relinquishment of Euclid's rights against KVAT, and an agreement for KVAT to purchase land owned by Kamin. Based on these facts, it is at least plausible that Kamin violated a duty external to the contract.

Kamin argues that it is implausible that he would intentionally cause a breach of Euclid's loan agreement with U.S. Bank given his potential personal liability under the Guaranty. Intentional interference is met by purposeful interference with the performance of another's contract, but "[t]he requisite level of intent also exists if the interferor knows that the interference is certain or substantially certain to occur as a result of his [or her] actions." *Commerce*

*Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 212-13 (4th Cir.

2001) (internal quotation marks and citation omitted).  Here, U.S. Bank has alleged

that Kamin structured a settlement agreement with KVAT in a way that diverted

funds from Euclid or U.S. Bank to himself.  Accepting these allegations as true,

Kamin would have been reasonably certain that he had interfered with the Euclid-

U.S. Bank contract.  Kamin's motivations are unknown.  U.S. Bank argues that

Kamin may have thought that he would not get caught.  Regardless, a reasonable

finder of fact could conclude from these allegations that Kamin acted for the

purpose of diverting funds from U.S. Bank, or knew that the diversion of funds

was substantially certain to occur.

Kamin also argues that U.S. Bank has not adequately pled damages resulting

from the alleged tortious interference with contract.  U.S. Bank has alleged,

however, that Kamin intentionally caused Euclid to breach its contractual

agreements with U.S. Bank, and enriched himself at the expense of U.S. Bank

through the KVAT settlement.  Damages for tortious interference with a contract

may be informed by the contract at issue.  *See Multi-Channel TV Cable Co. v.*

*Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1124 (4th Cir. 1995) ("If a

defendant is liable for tortious interference with a plaintiff's prospective

contractual relationships, the proper measure of the plaintiff's damages is the

present value of lost profits resulting from the defendant's actions.").  Damages

may also include losses that flow from the interference.  Restatement (Second) of

Torts § 774A (1979) ("One who is liable to another for interference with a contract

or prospective contractual relation is liable for damages for (a) the pecuniary loss

of the benefits of the contract or the prospective relation; (b) consequential losses

for which the interference is a legal cause; and (c) emotional distress or actual

harm to reputation, if they are reasonably to be expected to result from the

interference.").   U.S. Bank has plausibly alleged damages such that its claim

survives Kamin's motion to dismiss.

Kamin has also moved to dismiss U.S. Bank's counterclaim for statutory

conspiracy.  A party asserting statutory conspiracy under Va. Code Ann. §§ 18.2-

499, 18.2-500 (2009) must show "(1) a combination of two or more persons for the

purpose of willfully and maliciously injuring plaintiff in his business; and (2)

resulting damage to plaintiff."  *AWP, Inc. v. Commonwealth Excavating, Inc.,* No.

5:13cv031, 2013 WL 3830500, at *3 (W.D. Va. July 24, 2013).  The allegations

must allow inference of "a meeting of the minds and not mere parallel conduct."

*Id.*  Additionally, the concerted action must be unlawful.  *Simmons v. Miller*, 544

S.E.2d 666, 677 (Va. 2001) ("[T]he plaintiff must prove by clear and convincing

evidence that the conspirators acted with legal malice, that is, proof that the

defendant acted intentionally, purposefully, and without lawful justification.").

Nonperformance of a contract does not constitute unlawful action under the statute,

nor does conspiracy to breach a contract. *Station #2, LLC v. Lynch*, 695 S.E.2d 537, 541 (Va. 2010). These limitations are meant to prevent "turning every breach of contract into an actionable claim for fraud." *Id.* (internal quotation marks and citations omitted).

In connection with its statutory conspiracy claim, U.S. Bank alleges two unlawful acts independent of the Euclid-U.S. Bank loan agreement. U.S. Bank asserts that Kamin, Euclid, and KVAT conspired to (1) facilitate the breach of Euclid's fiduciary duty to maximize its assets for the payment of its creditors; and (2) facilitate the conversion of property subject to the loan agreement. Specifically, U.S. Bank alleges that Kamin, Euclid, and KVAT engaged in willful concerted action through the KVAT settlement agreement. The Virginia conspiracy statute criminalizes conspiracies to "willfully and maliciously injur[e] another in his reputation, trade, business or profession by any means whatever . . . ." Va. Code Ann. § 18.2–499A (2009). Here, a reasonable finder of fact could conclude that by structuring a settlement that released KVAT from its rent obligations and caused KVAT to purchase land from Kamin, the parties conspired to divert funds that would have gone to U.S. Bank, causing Euclid unable to pay its creditors.

To survive a motion to dismiss, U.S. Bank must also allege that it suffered causally related damage from the statutory conspiracy. Kamin argues that the only

harm alleged was to U.S. Bank's ability to recover under its loan agreement with Euclid. However, U.S. Bank also alleges that the conspiracy damaged the value of the collateral securing U.S. Bank's loan because the settlement agreement relinquished Euclid's rights against KVAT, and diverted money that Euclid would have received in rent.

Kamin argues that conversion is not properly alleged because the property interest at issue — future rent owed by KVAT — is not tangible property, but an interest that stems from a contract. While the tort of conversion usually applies only to tangible property, "'courts have recognized the tort of conversion in cases where intangible property rights arise from or are merged with a document.'" *Combined Ins. Co. of Am. v. Wiest,* 578 F. Supp. 2d 822, 835 (W.D. Va. 2008) (quoting *United Leasing Corp. v. Thrift Ins. Corp.,* 440 S.E.2d 902, 906 (Va. 1994)).

Kamin also contends that U.S. Bank has failed to allege a conspiracy between two or more persons. A conspiracy must be comprised of multiple parties. *AWP, Inc.,* 2013 WL 3830500, at *4 ("[P]roof of concerted action necessary to establish a conspiracy requires the involvement of at least two legally distinct persons or entities."). However, it is not necessary that every member of the conspiracy is party to the lawsuit. *Id.* at *5. Here, U.S. Bank has alleged that Kamin, Euclid, and KVAT entered into an unauthorized settlement agreement that

diverted funds that were intended for U.S. Bank to Kamin. U.S. Bank has adequately alleged the existence of an agreement between multiple parties to commit unlawful acts to injure the business interests of U.S. Bank. Its claim for statutory conspiracy survives Kamin's motion to dismiss.

Finally, I will deny Kamin's motion to dismiss U.S. Bank's claim for attorneys' fees. In connection with Counts I and II, U.S. Bank seeks attorneys' fees and collection costs under the Guaranty. Kamin argues that the Guaranty's attorneys' fees language should be declared facially unenforceable because it does not require U.S. Bank to be the prevailing party. However, an opportunity to examine the evidence of the setting in which the parties struck their bargain is necessary. *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 292 (4th Cir. 1989) ("To the contrary, unconscionability claims should but rarely be determined on the bare-bones pleadings — that is, with no opportunity for the parties to present relevant evidence of the circumstances surrounding the original consummation of their contractual relationship."); *see Blevins v. New Holland N. Am., Inc.*, 97 F. Supp. 2d 747, 750 (W.D. Va. 2000) ("The court must consider all of the relevant circumstances in order to determine whether the exclusion of remedies is unconscionable."). More evidence is needed on the issue of attorneys' fees and whether the clause is unconscionable.

III

For the reasons stated, I cannot at this stage of the litigation preclude U.S. Bank from asserting all of its counterclaims.  Accordingly, it is **ORDERED** that the Kamin's Partial Motion to Dismiss Counterclaim (ECF No. 15) is DENIED.

ENTER:   December 9, 2013

/s/  James P. Jones
United States District Judge